UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELSTON BONE, | * |
| | * |
| Petitioner, | * |
| | *    Civil Action No. 14-13487-ADB |
| v. | * |
| | * |
| THE ATTORNEY GENERAL OF THE | * |
| STATE OF MASSACHUSETTS, et al., | * |
| | * |
| Respondents. | * |

**MEMORANDUM AND ORDER**

December 16, 2015

D.J. BURROUGHS

On January 6, 2011, following a jury trial in Norfolk County Superior Court, Elston Bone ("Bone") was convicted of five counts of unlicensed possession of a firearm and two counts of improper storage of a firearm. He was sentenced to four years supervised probation, and to six concurrent four-year probationary terms. Before the Court is Bone's petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. For the reasons stated herein, Bone's petition is denied.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

On September 18, 2007, three Randolph, Massachusetts police officers were dispatched to an apartment at 8 Francis Drive in response to a 911 call from Bone's wife, Lucretia Bone ("Ms. Bone"). Commonwealth v. Bone, 84 Mass. App. Ct. 1106 (2013).[1] When the officers arrived, Ms. Bone reported that her husband had become enraged by something she had said that

---

[1] On habeas review, a "state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002). This presumption applies with equal force to the fact finding of state trial and appellate courts. Id.

day while they were at the gym, and that when the two got home, he threw her into the bedroom closet, jumped on her, slapped her, and tried to choke her, before departing in her car.

After recounting the incident to the officers, Ms. Bone volunteered that there were several firearms belonging to Bone in the apartment and led the officers to the one bedroom in the apartment. She removed a Ruger handgun with a fully loaded magazine from the nightstand. The weapon did not have a trigger or safety lock. The officers then asked if there were any other weapons in the apartment. Ms. Bone directed them to two shotguns and a fully loaded rifle without a locking mechanism that were under the bed and to ammunition in the closet. The officers took the firearms and ammunition with them when they left. The next day, they determined that Bone did not possess a Massachusetts firearm identification ("FID") card.

On January 6, 2011, following a three-day jury trial in Norfolk County Superior Court, Bone was convicted of five counts of unlicensed possession of a firearm, Mass. Gen. L. ch. 269, § 10(h)(1), and two counts of improper storage of a firearm, Mass. Gen. L. ch. 140, § 131L(a). He was sentenced to four years supervised probation for one count of unlicensed possession, and to six concurrent four-year probationary terms for the remaining counts.

In September 2011, Bone appealed his conviction to the Massachusetts Appeals Court ("Appeals Court"), claiming that: (1) the seizure of firearms and ammunition from his apartment violated the Fourth Amendment; (2) a statement of his wife admitted at trial was hearsay and therefore used in violation of the Sixth Amendment; (3) his motion for a required finding of not guilty as a matter of law should have been granted; (4-5) the jury instructions on improper storage of a firearm and possession of a firearm were erroneous; and (6) his convictions violated the Second Amendment. In an August 26, 2013 opinion, the Appeals Court denied Bone's appeal. Bone, 84 Mass. App. Ct. at 1106. Bone then applied to the Massachusetts Supreme

Judicial Court ("SJC") for further appellate review, but the SJC declined to hear his appeal. Commonwealth v. Bone, 466 Mass. 1106 (2013).

On August 22, 2014, Bone filed a petition for a writ of habeas corpus with this Court. [ECF No. 1]. On February 23, 2015, the Court allowed respondent's Motion for an Order to Comply with Rule 2(c) of the Rules Governing Section 2254 Cases, [ECF No. 19], and Bone filed a conforming petition on April 2, 2015 [ECF No. 21]. [2] Bone's petition raises eight, at times overlapping, claims for habeas relief. These include the grounds originally appealed to the Appeals Court, as well as the new argument that he possessed a New Hampshire concealed weapon license at the time the firearms were discovered and therefore should not have been convicted of unlicensed possession. On June 26, 2015, Bone filed his memorandum of law in support of his petition for a writ of habeas corpus, [ECF No. 29], and respondents filed their memorandum of law in opposition on October 9, 2015 [ECF No. 43]. Bone filed supplemental memoranda of law on October 13, 2015 and November 17, 2015. [ECF Nos. 44 & 45].

## II.  LEGAL STANDARD

A federal district court's review of a state criminal conviction is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). AEDPA permits federal courts to grant habeas relief after a final state adjudication of a federal constitutional claim only if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2] Rule 2(c) of the Rules Governing Section 2254 Cases prescribes the specific format for habeas petitions.

28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently from a decision of the Supreme Court on a materially indistinguishable set of facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court decision is considered an unreasonable application of Supreme Court precedent if the state court identifies the correct legal rule but unreasonably applies it to the facts. Id. at 407. An unreasonable application requires "some increment of incorrectness beyond error." Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003) (internal quotations omitted). Lastly, a state court judgment is based on an unreasonable determination of the facts if the decision is "objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A federal court cannot grant habeas relief to a state prisoner unless the prisoner has first exhausted his federal constitutional claims in state court. 28 U.S.C. § 2254(b)(1)(A). "The state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). A claim for habeas relief is exhausted if it has been "fairly and recognizably" presented in state court. Sanchez v. Roden, 753 F.3d 279, 294 (1st Cir. 2014) (quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir.2000)). In other words, "a petitioner must have tendered his federal claim [in state court] in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." Id. (quotations and citations omitted).

### III. DISCUSSION

#### a. Ground I: Fourth Amendment

In his habeas petition, Bone contends that the firearms and ammunition taken from the apartment were illegally seized in violation of the Fourth Amendment and therefore should not have been admitted at trial. [ECF No. 21 at 2]. The Appeals Court rejected this claim for several independent reasons, concluding that (1) the officers had probable cause to believe that the firearms were contraband and could seize them on that basis alone; (2) the circumstances were such that the officers reasonably could assume that Ms. Bone had the authority not only to allow the police access to the apartment, but also to show them items in areas under her joint control; and (3) the temporary removal of the weapons was a reasonable response to a dangerous situation.

Habeas claims based on the Fourth Amendment are generally not reviewable. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976); see also Sanna v. Dipaolo, 265 F.3d 1, 8 (1st Cir. 2001) ("Stone thus stands for the proposition that a federal habeas court ordinarily cannot revisit a state court's disposition of a prisoner's Fourth Amendment claims."). Under Stone, habeas review of a Fourth Amendment claim is only permitted "for instances in which a habeas petitioner had no realistic opportunity to litigate his Fourth Amendment claim fully and fairly in the state system." Id.; see also Cavitt v. Saba, 57 F. Supp. 3d 81, 91 (D. Mass. 2014) (Under Stone, "even if this Court believed that the state court had decided the [Fourth Amendment] issue wrongly . . . habeas relief

Case 1:14-cv-13487-ADB Document 46 Filed 12/16/15 Page 6 of 19

could not follow."). The burden is on the petitioner to show that he did not have a realistic opportunity to fully and fairly litigate his Fourth Amendment claim. Sanna, 265 F.3d at 8.

Bone has not met, or even attempted to meet, this burden. The record shows that he had an adequate opportunity to litigate his Fourth Amendment claim in the state courts. Before trial, Bone filed a motion to suppress the evidence and the trial court held a suppression hearing before denying the motion. Supplemental Answer ("S.A.") 43-46; 151-162. Moreover, on appeal, the parties briefed the Fourth Amendment issue and the Appeals Court addressed it on the merits. Bone fully litigated his challenge to the admissibility of the seized firearms and ammunition in state court, and therefore, this Court lacks authority to review Bone's Fourth Amendment claim. See Sanna, 265 F.3d at 8 ("So long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims . . . a federal habeas court lacks authority, under Stone, to second-guess the accuracy of the state court's resolution of those claims.").

### b. Ground II: Sixth Amendment

Bone next argues that his Sixth Amendment right to confront witnesses was violated when impermissible hearsay evidence was admitted at trial. He challenges testimony from a police officer who stated at trial that Ms. Bone told him that "[the guns] were not hers." [ECF No. 29 at 9; S.A. 687]. Before trial, following a motion in limine filed by defense counsel, the trial court held that this hearsay statement was in fact inadmissible. S.A. 192-193; 479. As the Appeals Court explained, however, the statement ultimately came into evidence at trial, after an officer recounted it when being cross examined by defense counsel, who then failed to object or move to strike:

> The defendant complains that, at trial, two of the testifying police officers referred to statements made to them by Ms. Bone, notwithstanding a ruling in limine excluding reference to these statements. All but one of the statements identified by the defendant were elicited in response to questioning by the defense during cross-

6

> examination. Defense counsel moved to strike only one such response, and the motion was allowed. Defense counsel also objected to the single statement elicited during questioning by the prosecution, and that objection was sustained. In other words, whenever the defense called the judge's attention to the issue, the judge excluded the evidence.

Bone, 84 Mass. App. Ct. at 1106. The Appeals Court denied Bone's Sixth Amendment claim because his defense counsel did not object at trial, and it was not the trial court judge's responsibility to object for him. Id. ("[H]is argument rests on the assumption that the judge was required to intervene sua sponte. Suffice it to say that the judge was under no obligation to do so.") (citing Commonwealth v. Pimental, 54 Mass. App. Ct. 325, 330 (2002)).

The habeas corpus remedy is "limited to consideration of federal constitutional issues," and accordingly, review is generally precluded where "a state court has reached its decision on the basis of an adequate and independent state-law ground." Burks v. Dubois, 55 F.3d 712, 715-716 (1st Cir. 1995). "Such independent and adequate state grounds exist where 'the state court declined to hear the federal claims because the prisoner failed to meet a state procedural requirement.'" Simpson v. Matesanz, 175 F.3d 200, 206 (1st Cir. 1999) (quoting Brewer v. Marshall, 119 F.3d 993, 999 (1st Cir. 1997)).

Failure to object in a timely manner in a state criminal trial constitutes an adequate and independent state ground "so long as the state has a consistently applied contemporaneous objection requirement and the state court has not waived it in the particular case by resting its decision on some other ground." Burks, 55 F.3d at 716. Here, "Massachusetts has a routinely enforced, consistently applied contemporaneous objection rule," id., and the Appeals Court rested its decision on this rule. Thus, the Appeals Court denied Bone's Sixth Amendment claim on an adequate and independent state law ground.

Where a state court rests its decision on such an independent state law ground, a habeas petitioner must "show[] cognizable cause for, and cognizable prejudice from, his procedural default, or, alternatively, [] demonstrate[] that the federal court's failure to address the claim on habeas review will occasion a miscarriage of justice." Id.; see also Barry v. Ficco, 392 F. Supp. 2d. 83, 98-99 (D. Mass. 2005) ("In the event of a procedural default, federal habeas review nevertheless is available if 'the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'") (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)).

Bone does not fall within either of these exceptions. With respect to the cause and prejudice exception, Bone has not shown that there was a cause for defense counsel's failure to object. "In order to establish cause for the default, petitioner must demonstrate 'that some objective factor external to the defense impeded [defense] counsel's efforts to comply with the State's procedural rule.'" Magee v. Harshbarger, 16 F.3d 469, 471-72 (1st Cir. 1994) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). Ineffective assistance of counsel can constitute "cause" for a failure to object at trial, but "when the habeas petitioner wants to excuse a state procedural default, that ineffective assistance claim must itself ordinarily be fairly presented to the state courts and exhausted." Barry, 392 F.Supp.2d at 99 (internal quotations omitted); see also Lynch v. Ficco, 438 F.3d 35, 46 (1st Cir. 2006) ("[A] federal habeas petitioner trying to excuse his procedural default by showing ineffective assistance of counsel as cause must first have presented the ineffective assistance claim to the state court."). Bone did not raise an ineffective assistance claim in state court, and he therefore may not do so now. In addition, he has not identified any external factor that impeded defense counsel from objecting to the

testimony. As the Appeals Court noted, defense counsel did object on numerous occasions to similar testimony, and there is no identifiable external factor that prevented counsel from doing so on all occasions. Because there was no cause for defense counsel's procedural default, the Court does not need to consider whether Bone will be prejudiced. See Puleio v. Vose, 830 F.2d 1197, 1202 (1st Cir. 1987). ("[T]he twin requirements of cause and prejudice are conjunctive, and the absence of any demonstration of the former renders inquiry into the latter unnecessary.").

Likewise, there will be no miscarriage of justice in the Court declining to review Bone's Sixth Amendment claim. To establish a miscarriage of justice, a habeas petitioner must "show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Schlup v. Delo, 513 U.S. 298, 327 (1995) (quoting Carrier, 477 U.S. at 496). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him . . . ." Id. This standard is "demanding and permits review only in the extraordinary case." House v. Bell, 547 U.S. 518, 538 (2006). This is not such an extraordinary case. Bone cannot show that, had the hearsay statement not been admitted, it is more likely than not that no reasonable juror would have convicted him. The remaining evidence—including that Bone was married to Ms. Bone, that photos of Bone were up in the apartment, and that Ms. Bone directed the police to the firearms after calling the police to report a domestic disturbance with Bone—precludes the Court from finding that a miscarriage of justice will occur if it declines to hear Bone's Sixth Amendment claim.

### c. Ground III: Sufficiency of the Evidence

Bone next argues that the trial court erred in denying his motion for a finding of not guilty as of matter of law. At trial, Bone's counsel argued that though the Commonwealth had established that there were firearms and ammunition in the apartment, it had not presented

sufficient evidence for a reasonable jury to conclude that the weapons were Bone's and that Bone lived in the apartment at the time of the incident. S.A. 802. The trial court denied the motion, S.A. 808, and on appeal, the Appeals Court agreed, finding that there was sufficient evidence to support the conviction:

> Viewed in the light most favorable to the Commonwealth, Commonwealth v. Latimore, 378 Mass. 671, 677–678 (1979), the evidence established that the defendant told the police at booking that he was married; he identified the apartment where the weapons were seized as his home address; the apartment was small and contained only one bedroom with a single closet; the Ruger handgun was found in the only bedroom nightstand; and the remaining guns were found under the bed. One of the officers testified to the existence of a photograph depicting a man and a woman together, and to the presence of male clothing. Finally, during cross-examination by defense counsel, one of the officers testified that Ms. Bone stated that the guns were not hers. This evidence sufficed to permit the jury to find that the defendant resided in the apartment with Ms. Bone, constructively possessed the guns and ammunition present in that location, and stored two of the weapons illegally.

Bone, Mass. App. Ct. at 1106.

Bone's sufficiency of the evidence claim is governed by standard established in the Jackson v. Virginia, 443 U.S. 307 (1979), under which reviewing courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. The Appeals Court applied Massachusetts' Latimore standard to deny Bone's claim for insufficient evidence, which is "functionally identical" to the Jackson standard. Logan v. Gelb, 790 F.3d 65, 71 (1st Cir. 2015); see also Leftwich v. Maloney, 532 F.3d 20, 24 (1st Cir. 2008) ("The Latimore court adopted the governing federal constitutional standard as the Massachusetts standard for sufficiency of the evidence challenges."). Under either Latimore or Jackson, "[t]he operative question for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." Logan, 790 F.3d at 71 (internal quotations omitted). "This standard must be applied with specific reference to the elements of the offense as defined by state law." Ortiz v. Dubois, 19 F.3d 708, 717 (1st Cir. 1994) (internal quotations omitted). Under 28 U.S.C. § 2254(d), Bone can prevail only if the Appeals Court unreasonably applied this standard.

Bone was convicted of five counts of unlicensed possession of a firearm, rifle, shotgun, or ammunition in violation of Mass. Gen. L. ch. 269, § 10(h)(1). The elements of this offense are that the defendant (1) possessed, (2) a firearm, rifle, shotgun, or ammunition, (3) without complying with the FID card requirements. Commonwealth v. McCollum, 79 Mass. App. Ct. 239 (2011). Bone does not elaborate in his habeas petition or the accompanying memorandum of law as to why the evidence was insufficient to support these five convictions. In his Appeals Court brief, Bone argued that there was insufficient evidence as to only the first element, possession, arguing that there was not enough evidence to permit a rational trier of fact to conclude he constructively possessed the firearms and ammunition found in the bedroom of the apartment. S.A. 67. [3] Under Massachusetts law, "[p]roof of constructive possession requires the Commonwealth to show knowledge coupled with the ability and intention to exercise dominion and control." Commonwealth v. Romero, 464 Mass. 648, 653 (2013) (internal quotations

---

[3] In his habeas petition, Bone also states that there was insufficient evidence to convict him of improper storage, under Mass. Gen. L. ch. 140, § 131L(a). Bone does not elaborate in his petition as to why the evidence was insufficient, but in his state court appeal, he argued that there was insufficient evidence to prove that the firearms and ammunition were not under the control of a lawfully authorized user—namely, his wife—and therefore exempt from § 131L(a)'s storage requirements. S.A. 71-76. The Appeals Court rejected this argument, finding that under Massachusetts law, the Commonwealth was not required to exclude Ms. Bone as a lawfully authorized user. Bone, 84 Mass. App. Ct. 1106 n. 4. On habeas review, this Court defers to the Appeals Court's interpretation of state law. See e.g., Lao v. Roden, No. CIV.A. 12-11481-NMG, 2014 WL 2767091, at *4 (D. Mass. June 17, 2014) ("A federal habeas petition is not the proper vehicle with which to challenge a state court's interpretation of the requirements of state law.").

omitted). Given the evidence admitted—including that Bone told the police he was married to Ms. Bone, that he at one time identified the apartment where the weapons were seized as his home address, that the weapons were found in the only bedroom in the apartment, and that Ms. Bone stated that the guns were not hers—the Appeals Court did not unreasonably conclude that a rational trier of fact could find possession beyond a reasonable doubt. Even assuming minds could perhaps differ over whether the state courts should have granted Bone's motion, given that Bone was not present when the guns were found by the police, no one testified that they saw him with the guns, and there was no fingerprint evidence, habeas relief is still not warranted. Under the AEDPA, "[e]ven where the petitioner presents facts that make the state court's determination a close call, the federal court must give deference to the state court." Jimenez v. Spencer, No. 07–12242–DPW, 2009 WL 2145803, at *4 (D. Mass. July 14, 2009); see also Harrington v. Richter, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). Thus, the Court defers to the state courts' reasonable judgment and denies Bone's third ground for habeas relief.

### d. Grounds IV-V: Jury Instructions

As grounds four and five of his habeas petition, Bone challenges two allegedly erroneous jury instructions. "Before a federal court may overturn a conviction resulting from a state trial because of an erroneous jury instruction, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Lucien v. Spencer, No. CA07-

11338-MLW, 2015 WL 5824726, at *12 (D. Mass. Sept. 30, 2015) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Gaines v. Matesanz, 272 F. Supp. 2d 121, 131 (D. Mass. 2003) ("As a general rule, improper jury instructions will not form the basis for federal habeas corpus relief. The question presented to the federal court is whether the challenged jury instructions violated the petitioner's constitutional rights.") (internal citations and quotations omitted). To establish such a constitutional violation, "the petitioner must show that the allegedly defective jury instruction 'so infected the entire trial that the resulting conviction violates due process.'" Lucien, 2015 WL 5824726 at *12 (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)).

In his memorandum of law, Bone elaborates on only one of the allegedly inappropriate instructions. He alleges that the following illustration, included in the instructions to help define possession, violated his Sixth Amendment right to a fair trial:

> An object is considered to be in a person's possession if that person has the ability to exercise control over that object, either directly or through another person. For example, law considers you to be in possession of things that you keep in your bureau drawer at home or in a safe deposit box at your bank.

[ECF No. 29, at 12]. Bone argues that "[t]he Judge's charge that equated possession with items kept in a bedroom drawer while the occupant was out of the home was on all fours with the Commonwealth's theory of the case," and therefore violated the Sixth Amendment. [ECF 29, at 12]. The Appeals Court rejected this argument, finding that "in the circumstances . . . the example did not 'unfairly emphasize the Commonwealth's view of the facts.'" Bone, 84 Mass. App. Ct. at 1106 (quoting Commonwealth v. Hicks, 377 Mass. 1, 10 (1979)).

Bone cannot show that the illustration in the jury instructions, taken from the Massachusetts Model Jury Instructions for Use in the District Court, "so infected the trial that the resulting conviction violates due process." Estelle, 502 U.S at 72. On habeas review, a

13

challenged jury instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Id. As the Appeals Court noted, it was never disputed at trial that a gun was removed from a nightstand drawer in the apartment; rather, Bone's defense was that the prosecution had not proven that the apartment or the guns were his. S.A. 69-71. Accordingly, in context, the judge's instruction does not rise to a constitutional violation. Under the contested instruction, the jury was still left to decide if the apartment, and the nightstand therein, were in fact Bone's. See Quercia v. United States, 289 U.S. 466, 469 (1933) ("In charging the jury, the trial judge is not limited to instructions of an abstract sort . . . provided he makes it clear to the jury that all matters of fact are submitted to their determination.").

In his petition, Bone also challenges the jury instructions on improper storage, though he does not expand on this point in his memorandum of law. In his state court appeal, Bone argued that the judge should have instructed the jury that a weapon does not need to comply with the state's storage requirements if it is carried or under the control of its owner or other authorized user. S.A. 76-77. According to Bone, this instruction should have been given because the government had not proven that Ms. Bone was not a lawfully authorized user in control of the weapons found in their bedroom. The Appeals Court denied this challenge on state law grounds, Bone, 84 Mass. App. Ct. 1106 at n.4, and Bone has not identified a federal right implicated by the allegedly improper instruction.[4] As a result, there is no basis for granting habeas relief, and this portion of his petition is denied. See e.g., Estelle, 502 U.S. at 63 ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Lao, 2014 WL 2767091, at *4 ("A federal habeas petition is not the proper vehicle with which to challenge

---

[4] To the extent Bone challenges the firearm storage statute under the Second Amendment, that will be addressed later in this opinion.

a state court's interpretation of the requirements of state law"); Clemente v. O'Brien, No. CIV.A. 10-10279-GAO, 2015 WL 1475931, at *5 (D. Mass. Mar. 31, 2015) ("Federal habeas courts do not grant relief simply on the basis of a deficient jury instruction.").[5]

### e. Ground VI: Second Amendment

Bone also challenges his convictions under the Second Amendment. According to Bone, the Supreme Court's rulings in McDonald v. Chicago, 561 U.S. 572 (2010), and District of Columbia v. Heller, 554 U.S. 570 (2008) require that his convictions for possession of a firearm without a license and improper firearm storage be reversed.

The Appeals Court rejected this argument, and its decision was neither contrary to, nor involved an unreasonable application of, clearly established Federal law. In Heller, the Supreme Court held that the District of Columbia's complete ban on handgun possession in the home violated the Second Amendment, as did its prohibition against rendering any lawful firearm in the home operable. 554 U.S. at 635. Then, in McDonald, the Court held that the Due Process Clause of the Fourteenth Amendment, by incorporation, makes the Second Amendment binding on the States. 561 U.S. at 791. Heller recognized that the right to bear arms "secured by the Second Amendment is not unlimited," 554 U.S. at 626, and McDonald reaffirmed that "Heller, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" 561 U.S. at 786 (quoting Heller, 554 U.S. at 626).

Bone challenges the constitutionality of both Mass. Gen. L. 269, § 10(h)(1), which makes it unlawful to possess a firearm without a FID card, and Mass. Gen. L. 140, § 131L(a), which

---

[5] In addition, the Court finds that any claim of error does not rise to the level of a constitutional violation warranting habeas relief. See Estelle, 502 U.S. at 71-72.

requires that a firearm not under the immediate control of an authorized user be securely locked or equipped with a safety device that renders it inoperable. In Commonwealth v. Loadholt, 460 Mass. 723 (2011) and Commonwealth v. McGowan, 464 Mass. 232 (2013), the SJC affirmed the constitutionality of each statute, following post-Heller and McDonald challenges.

In Loadholt, the SJC denied a facial challenge to Mass. Gen. L. 269, § 10(h)(1), finding that "the Court in Heller identified an individual right to carry and bear arms that is limited in scope" and which "did not prohibit laws regulating who may possess and carry weapons or purchase them, or where such weapons may be carried." 460 Mass. at 726. As a result, the SJC held that Heller did not render the Commonwealth's firearm licensing requirement unconstitutional. Id. ("[T]he requirement of 'prior approval by a government officer,' or a licensing system, does not by itself render the statute unconstitutional on its face.") Likewise, in McGowan, the SJC upheld Mass. Gen. L. 140, § 131L(a), finding that "unlike the provision declared unconstitutional in Heller, § 131L(a) is consistent with the right of self-defense in the home because it does not interfere with the ability of a licensed gun owner to carry or keep a loaded firearm under his immediate control for self-defense." 464 Mass. at 242. Under the provision challenged in Heller, "a person registered to keep a firearm (apart from law enforcement personnel) was prohibited in any circumstance from carrying or keeping a loaded firearm in his or her home." Id. (quoting Commonwealth v. Runyan, 546 Mass. 230, 263 (2009)). By contrast, under Mass. Gen. L. 141, § 131L(a), "an individual with a valid firearms identification card . . . is not obliged to secure or render inoperable a firearm while the individual carries it or while it remains otherwise under the individual's control." Id. In fact, Heller specifically noted that its analysis did not "suggest the invalidity of laws regulating the storage of

firearms to prevent accidents." Heller, 554 U.S. at 632. Accordingly, the SJC upheld the Commonwealth's firearm home storage requirements. McGowan, 464 Mass. at 503-504.

In this case, the Appeals Court relied on these two SJC opinions, which themselves applied established Federal law, to deny Bone's Second Amendment appeal. In so doing, the Appeals Court acted reasonably. While Heller and McDonald together hold that the Second Amendment places certain restrictions on state firearm regulations, neither case requires a finding that the Massachusetts statutes challenged by Bone are unconstitutional. Thus, Bone has not shown that the Appeals Court's decision was contrary to or an unreasonable application of clearly established Federal law.

    **f. Grounds VII-VIII: Out-Of-State License**

Finally, the Court may not consider grounds 7 and 8 of Bones' habeas petition, which were not raised in state court and are therefore unexhausted. Further, even assuming they were exhausted, neither would warrant habeas relief. In grounds 7 and 8, Bone contends that he had a New Hampshire firearms license at the time the firearms and ammunition were discovered, and that Massachusetts law recognizes out-of-state licenses for individuals that have recently relocated to the Commonwealth. This exception, however, only applies to residents that have relocated in the past 60 days. The record indicates that Bone had been residing in Massachusetts for over a year. See S.A. 00470; Mass. Gen. L. ch. 129C § 129B(j) (providing exception to FID card requirement for "[a]ny resident of the commonwealth returning after having been absent from the commonwealth for not less than 180 consecutive days or any new resident moving into the commonwealth, with respect to any firearm, rifle or shotgun and any ammunition therefor then in his possession, for 60 days after such return or entry into the commonwealth.").

In addition, the trial court judge instructed the jury, without any objection, that "there is no evidence in this case that the defendant had a firearm identification card and no evidence that the defendant qualified for one of the legal exemptions." S.A. 897. Under Massachusetts law, the burden was on the defendant to produce such evidence, and his failure to do so cannot now be used to obtain habeas relief. See Commonwealth v. Humphries, 465 Mass. 762, 769 (2013) ("Where a defendant's own license would provide a defense to the charged offense . . . holding of a valid license [is] an affirmative defense to a firearms offense."); see also Powell v. Tompkins, 783 F.3d 332, 339 (1st Cir. 2015) ("Absence of a license is not an element of the crime as that phrase is commonly used . . . . Rather, the burden is on the defendant to come forward with evidence of the defense.") (citing Commonwealth V. Jones, 375 Mass. 403, 406 (1977)).

## IV.   CONCLUSION

For the foregoing reasons, Bone's Petition for a Writ of Habeas Corpus is hereby DENIED.

Notwithstanding this Court's dismissal of the Petition, the court finds that Bone is entitled to a certificate of appealability. Bone has "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), meaning that he has demonstrated that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks and citations omitted). "[A] claim can be debatable even though every jurist of reason might agree . . . that petitioner will not prevail." Miller-El, 537 U.S. at 338. Accordingly, the court hereby issues a Certificate of Appealability as to all grounds raised by Bone.

**SO ORDERED.**

Dated: December 16, 2015

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
DISTRICT JUDGE